STATE OF NORTH CAROLINA v. WILLARD WARREN, JR.

No. 25

(Filed 7 March 1977)

1. **Homicide § 20— admissibility of knife**

    In this homicide prosecution, the trial court did not err in admitting a knife seized from defendant because bloodstains on the knife could not be definitely identified as human blood or grouped and the State's pathologist testified that, in his opinion, none of deceased's wounds were stab wounds, since two State's witnesses testified that defendant told them he had stabbed deceased and his brother had beaten deceased with a two by four, the pathologist's testimony revealed the body of deceased was badly mutilated, and the question of whether the knife was used in connection with the murder was thus a question for the jury.

2. **Homicide § 21— first degree murder — sufficiency of evidence**

    The State's evidence was sufficient for the jury in a prosecution for first degree murder where it tended to show that defendant told three people of his participation in a murder around 4 February 1975; he told two of the witnesses that he helped to kill the deceased using a knife; deceased and defendant were in the vicinity of an abandoned bulk plant at around 4:00 p.m. on 4 February 1975; soon thereafter defendant left that vicinity without deceased; deceased failed to report for the evening meal at the rest home where he lived; deceased's body was discovered in the bulk plant the next day; and when defendant was arrested some three weeks later, he had in his possession a knife bearing bloodstains.

3. **Criminal Law § 113— instruction that defendant presented evidence — absence of direct evidence by defendant**

    The trial court did not err in instructing the jury that defendant "has produced evidence tending to show" when defendant had presented no evidence on direct examination, since facts favorable to defendant produced on cross-examination constituted his evidence.

4. **Criminal Law § 113— instructions — no assumption by court**

    The trial court did not assume that defendant had made statements acknowledging his guilt in instructing the jury that defendant produced evidence tending to show that "any statement that might have been made" should not be believed because of defendant's excessive drinking and tendency to brag.

5. **Criminal Law § 116— failure of defendant to testify — absence of instructions**

    The trial court did not err in failing to instruct the jury regarding defendant's failure to testify absent a special request for such an instruction.

**6. Homicide § 30— first degree murder — failure to instruct on second degree murder**

In this first degree murder prosecution, testimony by a State's witness that sometime around the date of the victim's death, defendant told him that he "had killed a man down about the railroad tracks" did not require the court to submit an issue of second degree murder to the jury, and the court did not err in failing to submit such an issue where all the evidence pointed to a felony-murder.

**7. Homicide §§ 4, 31— first degree murder — existence after death penalty held unconstitutional**

There is no merit in defendant's contention that at the time of his second trial the crime of first degree murder did not exist because the U. S. Supreme Court had declared G.S. 14-17 unconstitutional in *Woodson v. North Carolina,* ...... U.S. ...... (1976) since the *Woodson* decision declared only the death penalty imposed by G.S. 14-17 unconstitutional, and the penalty section of the statute was severable.

**8. Homicide § 31— life imprisonment — provision triggered when death penalty held unconstitutional**

When the U. S. Supreme Court in *Woodson v. North Carolina,* ...... U.S. ...... (1976) held that the mandatory death penalty provided under Chapter 1201 of the 1973 Session Laws (1974 Sess.) could not be constitutionally imposed for first degree murder, the alternative provision for life imprisonment set forth in Section 7 of Chapter 1201 was triggered, notwithstanding the death penalty for first degree murder was not held *per se* unconstitutional.

APPEAL by defendant pursuant to G.S. 7A-27 (a) from *Martin, Harry C., J.,* at the 12 July 1976 Session of HAYWOOD Superior Court.

On an indictment, proper in form, defendant was charged with the first-degree murder of Leo Jack Clark. The jury found defendant guilty as charged and a sentence of life imprisonment was imposed.

This is the second appeal in this case. We granted defendant a new trial in *State v. Warren,* 289 N.C. 551, 223 S.E. 2d 317 (1976).

The State offered evidence tending to show the following: Leo Jack Clark was a resident of a rest home in Waynesville, North Carolina. On 4 February 1975, Clark ate lunch at the rest home and then left for town with about $18.00 in his possession. When he failed to return for the evening meal, normally served between 4:00 and 5:00 p.m., Mary L. Caldwell, the operator of the rest home, notified the police. Clark's body was found on 5 February 1975 inside the abandoned Pure Oil bulk

plant near the railroad tracks in Waynesville. The floor of the building was littered with debris, papers, and dirt, and there was blood on the littered paper and the wall. The victim's wallet, found lying beside his body, was empty.

Dr. Robert S. Boatwright, an expert in pathology, examined the body and found numerous injuries upon the face of the deceased, including a deep abrasion on the upper left forehead, a torn left ear with exposed cartilage, a one-inch wound over the left eyebrow and a long abrasion over the left jaw which extended into the mouth, and a broken jawbone. There was internal hemorrhaging beneath the skull, multiple rib fractures, punctured lungs, ruptured liver, broken right wrist, broken left hand and leg. The doctor gave his opinion that the cause of death was multiple injuries. More specifically, he felt that either injuries to the side of the head and the brain, fractured ribs, ruptured liver or the shock from the combined trauma were all sufficient to cause death. He further stated that in his opinion the wounds about the head and face were caused by a blunt instrument, rather than a sharp instrument. He found no wounds that he could characterize as stab wounds, either on the face or the thoracic area of the body.

Further evidence for the State tended to show that the deceased had been seen by Kathy Trammell, an employee of the rest home, between 4:00 and 4:30 p.m. on 4 February approximately 200 to 300 yards from the bulk plant, walking in the direction of the rest home. Barbara Mercer saw the defendant talking to Reeves Webb on the street the same afternoon. Later, defendant, his brother, and Reeves Webb came to Barbara Mercer's house and drank some wine. Verlin Stewart saw defendant in the area of the bulk plant with an unidentified person between 4:00 and 4:30 p.m.

Reeves Webb testified that he met defendant, defendant's brother and the deceased near the railroad tracks on the afternoon of 4 February. Reeves left to get more wine from the A & P Store nearby. When Webb returned with the wine, he met defendant and his brother on the street near the Mercer house, but Clark was not with them. The three went into the Mercer house and drank some wine.

Verner Frank London, who was not a witness at the first trial, testified that on the morning of 5 February 1975, he was in a beer joint in Waynesville and recalled the defendant com-

ing in and sitting beside him. Defendant was intoxicated and said "he had killed a man down about the railroad tracks."

Ronald R. Shattles, who also was not a witness at the first trial, testified that on 25 February 1975, he was in the Haywood County Jail charged with several counts of forgery. He occupied a cell in common with the defendant and others, including Curtis Wyatt. The subject of Jack Clark's death came up and someone asked the defendant "if he had done it." Defendant said in Shattles' presence that he and his brother had been drinking in a shed together with Reeves Webb and the deceased; that they sent Reeves Webb for more wine; that after he left, defendant and his brother decided to rob the deceased; that in the course of the robbery defendant's brother beat Clark with a two by four and that he, defendant, stabbed the deceased twice; that "it sounded like air coming out of a car tire"; that they took $18.34 from the deceased and wiped their hands on papers in the shed.

Curtis Boyd Wyatt was incarcerated in the Haywood County Jail on 25 February on a breaking and entering charge. While in jail, he was placed in a cell with the defendant, Shattles, and others. Defendant told Wyatt that he and his brother met Webb and "this old man" on a railroad track and drank wine with them until the wine ran out. They sent Reeves to get some more wine with a dollar that the old man gave them. While Reeves was gone, defendant and his brother decided to rob the old man. When he put up a scuffle, defendant's brother struck the deceased with a two by four and defendant stabbed him with a knife. Defendant said they got $18.34 or $18.36 from him. After that the defendant cleaned himself off with papers and went out to the street to meet Reeves before he returned with the wine. They met Reeves across from the Mercer house and went inside to drink the wine.

Defendant offered no evidence.

Other facts necessary to the decision will be discussed in the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorney General James Wallace, Jr. for the State.*

*Creighton W. Sossomon for defendant appellant.*

State v. Warren

COPELAND, Justice.

[1]　Under his first assignment of error, defendant asserts the court erred in admitting into evidence the knife found on defendant's person when he was arrested.

Defendant maintains that the knife seized from him at the time of his arrest was irrelevant to the jury's consideration of this case because, while the State crime laboratory examination revealed blood stains on the knife, the stains could not definitely be identified as human blood or grouped. Defendant points out that the State's own expert witness, the pathologist who examined the body, testified that, in his opinion, none of the wounds were stab wounds. Thus, defendant says introduction of the knife served no probative purpose and was calculated to arouse prejudice against him. We disagree.

In a criminal case, any circumstance that is calculated to throw light upon the alleged crime is admissible. The weight of circumstantial evidence is for the jury. *State v. Sneeden,* 274 N.C. 498, 164 S.E. 2d 190 (1968) ; *State v. Hamilton,* 264 N.C. 277, 141 S.E. 2d 506 (1965), *cert. denied,* 384 U.S. 1020, 16 L.Ed. 2d 1044, 86 S.Ct. 1936. Any object which has a relevant connection is admissible in evidence. A weapon may be admitted where there is evidence *tending* to show that it was used in the commission of the crime charged. *State v. Sneeden, supra;* 1 Stansbury's N. C. Evidence, § 118 (Brandis Rev. 1973).

Two of the State's witnesses, Wyatt and Shattles, testified that the defendant told them he and his brother had stabbed the deceased and beaten him with a two by four. Dr. Boatwright's testimony revealed the body of the deceased was badly mutilated. Under these circumstances, whether or not this knife, or any knife, was used in connection with the alleged murder was a question for the jury.

This assignment of error is without merit and overruled.

[2]　Defendant contends his motion for nonsuit and his motion to set aside the verdict should have been sustained.

According to the evidence, defendant told at least three people of his participation in a murder around 4 February 1975 (to two of these witnesses he indicated that he helped kill the deceased using a knife). In addition, the State's evidence tended to show: (1) that the deceased and the defendant were both in

the vicinity of the bulk plant at around 4:00 p.m. on 4 February 1975; (2) that the deceased failed to report for the evening meal at the rest home, served between 4:00 and 5:00 p.m. (he had never missed before); (3) that soon thereafter, the defendant left the vicinity of the bulk plant without the deceased; (4) that the deceased's body was discovered in the bulk plant, the next day; (5) that when defendant was arrested some three weeks later, he had in his possession a knife bearing blood stains.

On a motion for nonsuit, the evidence must be considered in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom. *State v. Finney,* 290 N.C. 755, 228 S.E. 2d 433 (1976); *State v. Bowden,* 290 N.C. 702, 228 S.E. 2d 414 (1976); *State v. Hunter,* 290 N.C. 556, 227 S.E. 2d 535 (1976). When this is done, we conclude the motion for nonsuit was properly overruled.

A motion to set aside the verdict is discretionary and not reviewable on appeal absent an abuse of discretion. *State v. Lindley,* 286 N.C. 255, 210 S.E. 2d 207 (1974); *State v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971). We find no abuse in this case in view of the State's evidence. These assignments are overruled.

[3] Defendant claims Judge Martin committed error in stating to the jury that the defendant had presented evidence when in fact he had presented none on direct examination.

After recapitulating the State's evidence, Judge Martin said:

"The defendant, members of the jury, on the other hand, has produced evidence tending to show, and what it shows is entirely for you to determine, that no one in this case has taken the stand and testified that they saw the defendant assault Mr. Clark in any way at all; that there were no fingerprints found at the scene of this location which tied the defendant, Warren; that the defendant, Warren, was seen in the home of Mrs. Marcer some time around 4:00 or 4:30 in the afternoon of February the 4th, and that he was taken to his home by Mrs. Mercer's son; that any statement that might have been made should not be believed by the jury because the witnesses testified that the defendant was a person who drank a lot of wine and

State v. Warren

whiskey, and that he was given to bragging and talking about things that were not so."

In stating "[t]he defendant . . . has produced evidence," the trial judge was clearly referring to evidence elicited on cross-examination. Facts favorable to the defendant produced on cross-examination are his evidence. *See* V Wigmore, Evidence § 1368. The judge's instruction was correct, although it might have been clearer. If defendant desired further clarification, he should have asked for it.

[4] Defendant also complains that this portion of the judge's charge prejudicially assumed a material fact controverted by his plea of not guilty, that he had made statements acknowledging his guilt. The court's charge simply instructed that, whether the statements were made or not, if made, they should not be believed because of defendant's intemperance and tendency to brag. Only by referring to "any statement that might have been made" could the court remind the jury of the testimony elicited on cross-examination supporting this theory of defendant's innocence.

Judge Martin was obviously trying to present the evidence in the light most favorable to the defendant, even though defendant had offered no witnesses. The judge gave him the benefit of each favorable fact revealed on cross-examination and defendant was not prejudiced by this recapitulation. The assignment is overruled.

[5] In his next assignment of error, defendant contends the trial court erred in failing to instruct the jury regarding his failure to testify.

Absent a special request, the trial court is not required to instruct the jury that defendant's failure to testify creates no presumption against him. *State v. Rankin,* 282 N.C. 572, 193 S.E. 2d 740 (1973); *State v. Kelly,* 216 N.C. 627, 6 S.E. 2d 533 (1940); *see* 1 Stansbury's N. C. Evidence, § 56 (Brandis Rev. 1973).

Furthermore, the record discloses that at the conclusion of his charge, Judge Martin invited counsel for the State and the defendant to approach the bench and, out of the hearing of the jury, inquired if either had any additions or corrections to the charge. Both counsel answered, "No."

The assignment of error is meritless and overruled.

**[6]**  Defendant maintains the trial judge should have submitted the lesser offense of second-degree murder to the jury.

In his instruction to the jury, the trial judge restricted their consideration to felony-murder. "It is a well established rule that when the law and evidence justify the use of the felony-murder rule, then the State is not required to prove premeditation and deliberation, and neither is the court required to submit to the jury second-degree murder or manslaughter unless there is evidence to support it." *State v. Swift,* ·290 N.C. 383, 407, 226 S.E. 2d 652, 669 (1976) ; *accord, State v. Doss,* 279 N.C. 413, 183 S.E. 2d 671 (1971).

Defendant contends the evidence given by State's witness Verner London was sufficient to require submission of the issue of second-degree murder. London testified that sometime around the date of Clark's death, defendant told him that he "had killed a man down about the railroad tracks." Such evidence standing alone is clearly insufficient to require submission of the issue of second-degree murder. All the other evidence in the case pointed to a felony-murder.

The assignment of error is overruled.

Finally, defendant contends Judge Martin committed error in allowing the jury to consider a verdict of first-degree murder and in sentencing the defendant to life imprisonment.

**[7]**  Defendant argues that at the time of his second trial in this case, *Woodson v. North Carolina,* 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976) had declared G.S. 14-17 unconstitutional and thus, the crime of first degree murder did not exist. Defendant practically concedes this argument is spurious because *Woodson, supra,* declared only the death penalty imposed by G.S. 14-17 unconstitutional and the penalty section of that statute was severable. *See State v. Talbert,* 282 N.C. 718, 194 S.E. 2d 822 (1973).

**[8]**  Defendant next takes the novel position that *Woodson v. North Carolina, supra,* did not bring into play Section 7 of Chapter 1201 of the 1973 Session Laws (1974 Sess.) which was enacted in response to *Furman v. Georgia,* 408 U.S. 238, 33 L.Ed. 2d 346, 92 S.Ct. 2726 (1972). The North Carolina legislature passed Chapter 1201 after *Furman, supra,* in effect struck

State v. Warren

down our former law permitting juries unbridled discretion to either grant death or life imprisonment in a capital case. Chapter 1201 instead provided a mandatory death sentence for capital offenses. In its wisdom the General Assembly added Section 7 to Chapter 1201, providing for punishment of life imprisonment "in the event it is determined by the North Carolina Supreme Court or the United States Supreme Court that a sentence of death may not be constitutionally imposed for any capital offense for which the death penalty is provided by this Act. . . . "

Defendant interprets the General Assembly's language to mean that the alternative punishment, life imprisonment, applies only if the death penalty for first-degree murder is held to be *per se* unconstitutional. The United States Supreme Court has not so held, *Gregg v. Georgia,* ____ U.S. ____ 49 L.Ed. 2d 859, ____ S.Ct. ____ (1976), so defendant argues Section 7 of Chapter 1201 is inapplicable and he cannot be sentenced to life imprisonment. This position is untenable. In enacting Section 7, obviously the legislature was concerned that an alternative punishment be provided if the North Carolina death penalty was ever again overturned, regardless of the state of the death penalty generally.

When the United States Supreme Court in *Woodson, supra,* held that the death penalty provided under Chapter 1201 could not be constitutionally imposed, it triggered the alternative provision for life imprisonment. *State v. Cousin,* 291 N.C. 413, 230 S.E. 2d 518 (1976). Judge Martin properly allowed the jury to consider a verdict of first-degree murder and, upon conviction, properly sentenced the defendant to life imprisonment.

The assignment of error is without merit and overruled.

Because of the serious nature of the case, we have examined the record for other errors and have found none.

The defendant has again been tried and found guilty of a very brutal murder, and in his second trial we find

No error.