STATE OF NORTH CAROLINA v. JOHN F. ADAMS

No. 8626SC1019

(Filed 7 April 1987)

**1. Criminal Law § 75.14— noncustodial statements—admissibility without regard to mental competency**

Defendant's noncustodial, self-initiated inculpatory statements were admissible in defendant's murder trial without regard to defendant's mental competency at the time he made the statements.

**2. Homicide § 15.1— admissibility of knife found in vicinity of body**

A knife stained with human blood found in a park 291 feet from a murder victim's body was properly admitted in defendant's murder trial, although there was no direct evidence linking the knife to the crime or to defendant, where an autopsy revealed the victim died of stab wounds to the neck and back; a medical examiner testified that those stab wounds could have been made by such knife; and an officer testified that defendant stated that he "cut off" the victim's head.

**3. Homicide § 21.7— second degree murder—sufficient evidence of unlawfulness and malice**

There was sufficient evidence that defendant killed the victim unlawfully and with malice to support defendant's conviction of second degree murder where there was evidence tending to show that the victim died of stab wounds to the neck and back; an eyewitness saw a fight between defendant and the victim in which defendant attacked the victim some hours before the victim's body was found; a knife stained with human blood was found two hundred ninety-one feet from the victim's body; defendant made statements to two witnesses the day after the victim's death in which defendant indicated that he had cut the victim's throat; several days after the stabbing death of the victim,

defendant appeared at a county jail and told jail personnel that he wanted to confess to killing someone; and defendant thereafter told a police officer that he had "cut off" the victim's head.

**4. Homicide § 30.2— evidence of mental illness and alcoholism—instruction on voluntary manslaughter not required**

In a second degree murder case, defendant's mental illness and alcoholism will not rebut the presumption of malice where the killing was accomplished by the intentional use of a deadly weapon; consequently, evidence of defendant's mental illness and alcoholism did not require the trial court to instruct on the lesser-included offense of voluntary manslaughter.

**5. Criminal Law § 122.2— jury not deadlocked—"dynamite charge"—no abuse of discretion**

The trial court did not abuse its discretion in giving the jury the "dynamite charge" pursuant to N.C.G.S. § 15A-1235(c) prior to an afternoon break when the jury had been deliberating less than two hours and there was no indication that the jury was deadlocked.

APPEAL by defendant from *Friday, Judge*. Judgment entered 16 April 1986 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 12 February 1987.

On 9 June 1985, the Charlotte police found Alonzo Morris dead from stab wounds on Luther Street in the neighborhood known as the Cherry Community in Charlotte.

Several days later, on or about 11 June 1985, police arrested defendant charging him with the murder of Alonzo Morris. On a motion questioning defendant's capacity to proceed to trial, defendant was sent to Dorothea Dix Hospital where a staff doctor adjudged him incapable of proceeding to trial and recommended his commitment to Broughton Hospital. At Broughton Hospital, defendant was found not to meet the criteria for involuntary commitment, and was returned to Dorothea Dix Hospital for further evaluation. On 8 August 1985, defendant was deemed capable of proceeding to trial.

On 14 October 1985, defendant was indicted by a grand jury for the murder of Alonzo Morris. At trial the jury returned a verdict finding defendant guilty of second degree murder, and the court sentenced defendant to imprisonment for a term of fifteen years. Defendant appealed.

*Attorney General Lacy H. Thornburg by Assistant Attorney General Doris J. Holton for the State.*

*Wishart, Norris, Henninger and Pittman, P.A., by Charles L. Morgan, Jr., for defendant-appellant.*

PARKER, Judge.

In this appeal, defendant raises five assignments of error: (i) the court's denial of the motion to suppress defendant's confession; (ii) the court's ruling that a knife found in the vicinity of the victim's body was admissible in evidence; (iii) the court's denial of defendant's motion to dismiss at the close of the State's evidence; (iv) the court's refusal to instruct the jury on the offense of voluntary manslaughter; and (v) the court's decision to give additional instructions after the jury had been deliberating for over two hours. We will address these assignments of error seriatim.

[1] In his first assignment of error, defendant contends that the trial court erred in denying his motion to suppress certain inculpatory statements defendant made to law enforcement officers. Defendant asserts that these statements were involuntarily made because he was mentally incompetent at the time and that these statements should, therefore, be suppressed pursuant to G.S. 15A-974(1). We disagree.

At the hearing before Judge Saunders on defendant's motion to suppress statements he made in June 1985, the evidence tended to show that on or about 11 June 1985, defendant went to the Mecklenburg County Jail and told Sheriff's Department employees that he had killed someone and wanted to confess. Charlotte Police Officer Shelton then came to the jail at the request of jail personnel to escort defendant to the Law Enforcement Center. At this time, Officer Shelton noted that although defendant was coherent, he seemed to have "mental problems." As they walked to the Law Enforcement Center, defendant identified himself, gave his address as 1504 Luther Street, and stated that he had "cut off Alonzo's head" over on Luther Street. Once at the Law Enforcement Center, Officer Shelton checked the current homicide reports and then took defendant to 1504 Luther Street where he was identified by relatives. Officer Shelton gave the information he had gathered to homicide investigators. Later that same day, defendant was taken into police custody.

At the hearing, defendant presented evidence tending to show that he had an extensive history of mental illness. Defendant's expert witness testified that defendant was a paranoid schizophrenic who, in a psychotic condition, when delusional and hallucinating, "wouldn't be able to make use of the fact the Miranda is for his own benefit." The expert also testified that defendant's mental illness prevented him from "participating rationally in the legal process," and that in a psychiatric examination several days after defendant's inculpatory statements, defendant's "behavior and statements were determined more by his mental illness than by his normal self."

After the close of the evidence on the motion to suppress, Judge Saunders ordered that statements made by defendant after he was in police custody be suppressed, but that the other "noncustodial admissions of criminal conduct" made to jail personnel and to Officer Shelton were admissible. At trial, defendant again made a motion to suppress this evidence, and again this motion was denied.

General Statute 15A-974(1) states:

Upon timely motion, evidence must be suppressed if:

(1) Its exclusion is required by the Constitution of the United States or the Constitution of the State of North Carolina . . . .

The United States Supreme Court has recently held in *Colorado v. Connelly*, 479 U.S. ---, 107 S.Ct. 515, 93 L.Ed. 2d 473 (1986), a case factually similar to the case at bar, that there is no federal constitutional ground for the exclusion of a noncustodial confession. In *Connelly*, the defendant, a chronic schizophrenic who, when in a psychotic state, suffered from hallucinations which interfered with his ability to make free and rational choices, walked up to a Denver Police Officer and confessed to having committed a murder. The defendant sought to suppress his confession on the grounds that his mental state interfered with his free will at the time of the confession. The Supreme Court held that the admissibility of this kind of statement is governed by state rules of evidence rather than by Supreme Court decisions regarding coerced confessions and *Miranda* waivers. *Id.* The basis of this holding is that "coercive police activity is a necessary

predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Connelly*, 479 U.S. at - - -, 107 S.Ct. at 522, 93 L.Ed. 2d at 484.

Upon examination of North Carolina decisions, we must conclude that there is no State basis for the exclusion of defendant's noncustodial, self-initiated inculpatory statements. In *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631, *cert. denied*, 449 U.S. 960, 101 S.Ct. 372, 66 L.Ed. 2d 227 (1980), the North Carolina Supreme Court held that the State may offer in evidence testimony describing a defendant's self-initiated acts, statements, and questions without a preliminary inquiry into defendant's mental competence, so long as these acts, statements, and questions are relevant to an issue in the case. The defendant in *Leonard* was a diagnosed chronic schizophrenic who could not tell the difference between right and wrong because of her mental illness, and who heard and talked to numerous voices including those of God and Satan. While in police custody for the shooting of her sister, after having refused to waive her constitutional rights, defendant asked police, "How many times did I shoot her?" and whether the State still had the death penalty.

We find the *Leonard* case controlling on the facts before us. Defendant relies on *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed. 2d 242 (1960), and *State v. Ross*, 297 N.C. 137, 254 S.E. 2d 10 (1979), to support his argument for suppression of the confession. However, these cases may be distinguished from the case before us because in *Blackburn* and in *Ross* the confessions of the defendants were in response to interrogation by police while the defendants were in police custody. In contrast, in the case before us, as in the *Leonard* case, *supra*, defendant's confession was initiated by defendant, and not a response to interrogation. Additionally, in the case before us, defendant was not even in custody when he made his inculpatory statements. These distinguishing factors make the argument for admissibility of defendant's statements much stronger than in *Ross*. This assignment of error is overruled.

[2] In his second assignment of error, defendant contends that the trial court erred in admitting into evidence State's Exhibit Number 10, a knife stained with human blood found in a park two hundred ninety-one feet from the victim's body. Defendant argues

that there was no evidence that the knife had any relevant connection to the crime and that testimony regarding the knife was irrelevant and unfairly prejudicial. We do not agree.

At trial, the State presented the testimony of a "Crime Scene Search Technician" employed with the Charlotte Police Department Crime Lab who testified that she located a "butcher-type knife stuck in the ground" in a park two hundred ninety-one feet, four inches from where the body was found. The court received that knife into evidence over the objection of defendant. The parties stipulated that stains on the knife were found to be that of human blood, but that the blood could not be typed. No fingerprints could be raised on the knife. The State also presented testimony of the Medical Examiner who stated that his autopsy on the victim revealed that the victim died of stab wounds to the neck and back, and that those stab wounds could have been made by the State's Exhibit Number 10, the knife. Finally, the State presented the testimony of Officer Shelton that on 12 June 1985 defendant stated he "cut off" Alonzo's head.

In a criminal case, any circumstance that is calculated to throw light upon the alleged crime is admissible. The weight of circumstantial evidence is for the jury. *State v. Warren*, 292 N.C. 235, 239, 232 S.E. 2d 419, 422 (1977); *State v. Hamilton*, 264 N.C. 277, 286-287, 141 S.E. 2d 506, 513 (1965), *cert. denied*, 384 U.S. 1020, 86 S.Ct. 1936, 16 L.Ed. 2d 1044 (1966). Any object having a relevant connection to the crime is admissible in evidence. A weapon may be admitted when there is evidence tending to show it was used in the commission of the crime. *Warren*, 292 N.C. at 239, 232 S.E. 2d at 422; *State v. Sneeden*, 274 N.C. 498, 502, 164 S.E. 2d 190, 193 (1968). While in the case before us there is no direct evidence linking the knife to the crime or the defendant to the knife, the knife was clearly a part of a chain of circumstances tending to show the commission of the crime. The distance between where the knife was found and the body of the victim affects only the probative weight of the evidence and not its admissibility. *See State v. Thomas*, 294 N.C. 105, 118, 240 S.E. 2d 426, 436 (1978). Therefore, it was not error for the trial court to admit the knife into evidence or to allow testimony concerning the knife.

[3] Defendant's third assignment of error is to the trial court's denial of his motion to dismiss the charges against him at the

close of the State's evidence. Specifically, defendant contends that the evidence was insufficient to show defendant committed an unlawful killing. This argument is without merit.

In *State v. Bates*, 313 N.C. 580, 581, 330 S.E. 2d 200, 201 (1985), our Supreme Court addressed the test for denial of a criminal defendant's motion to dismiss:

> A defendant's motion for dismissal for insufficiency of the evidence in a criminal case raises the question of whether there is substantial evidence of each essential element of the offense charged, or of a lesser offense included therein, and of the defendant's being the perpetrator of such offense. . . . In determining this issue the court must consider the evidence in the light most favorable to the state, and the state is entitled to every reasonable inference to be drawn therefrom. . . . If there is substantial evidence — whether direct, circumstantial, or both — to support a finding that the offense charged has been committed and that the defendant committed it, a case for the jury is made and a motion to dismiss should be denied. . . . Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. (Citations omitted.)

However, these principles of law are more easily stated than applied, and each case turns on its own peculiar facts; decisions in prior cases are rarely controlling because the evidence differs from case to case. *State v. White*, 293 N.C. 91, 95, 235 S.E. 2d 55, 58 (1977); *State v. Cutler*, 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967).

In this case, the State presented, among other evidence, the testimony of an eyewitness to a fight on Luther Street between defendant and the victim in which defendant attacked the victim hours before the victim's body was found stabbed to death on Luther Street. The State produced a knife stained with human blood less than three hundred feet from where the victim's body was found, and the medical examiner who performed the autopsy testified that the victim had sustained numerous stab wounds to the neck and head. Defendant's cousin, who lived with defendant, and her friend both testified to statements made by defendant the day after the victim's death. Defendant's cousin testified that defendant said to her: "Bitch, you think I cut Alonzo, mother f----.

I will cut your mother f---- throat." The friend of defendant's cousin testified that defendant said to his cousin, "Bitch, I cut Alonzo's throat. I will cut you, too." Finally, several days after the stabbing death of the victim, defendant appeared at the Mecklenburg County Jail and told jail personnel that he wanted to confess to killing someone. Defendant thereafter told the police officer who was summoned to the jail that he had "cut off Alonzo's head" on Luther Street.

Viewing this evidence in the light most favorable to the State, and giving the State every reasonable inference that may be drawn therefrom, we find there is substantial evidence that defendant killed the victim Alonzo Morris unlawfully and with malice.

[4] In his fourth assignment of error, defendant contends that the trial court erred in its refusal to instruct the jury on the offense of voluntary manslaughter. Defendant contends that his mental illness and chronic alcoholism rendered him incapable of forming the *mens rea* necessary to support a conviction of second degree murder. We again disagree.

It is well settled that when there is evidence from which the jury could find the defendant guilty of a lesser-included offense, the defendant is entitled to jury instructions on the lesser offense. *State v. Wallace*, 309 N.C. 141, 145, 305 S.E. 2d 548, 551 (1983); *State v. Redfern*, 291 N.C. 319, 321, 230 S.E. 2d 152, 153 (1976). Murder in the second degree is "the unlawful killing of a human being with malice but without premeditation and deliberation." *State v. Snyder*, 311 N.C. 391, 393, 317 S.E. 2d 394, 395 (1984). Voluntary manslaughter is the unlawful killing of a human being without malice, premeditation, or deliberation. *State v. Robbins*, 309 N.C. 771, 777, 309 S.E. 2d 188, 191 (1983); *State v. Rummage*, 280 N.C. 51, 55, 185 S.E. 2d 221, 224 (1971). Where there is no evidence of mitigating or justifying factors, a killing accomplished by the intentional use of a deadly weapon is deemed to be unlawful and malicious. *State v. Reynolds*, 307 N.C. 184, 191, 297 S.E. 2d 532, 536 (1982); *State v. Hankerson*, 288 N.C. 632, 650, 220 S.E. 2d 575, 584 (1975), *rev'd on other grounds*, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed. 2d 306 (1977). As our Supreme Court has stated, "In order for an accused to reduce the crime of second-degree murder to voluntary manslaughter he must rely on evi-

dence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sudden provocation." *Robbins*, 309 N.C. at 777-778, 309 S.E. 2d at 192. In the case before us, no such evidence of the elements of heat of passion on sudden provocation has been presented.

Defendant, however, would have this Court create a new rule that mental illness and chronic alcoholism should be considered in determining whether the State has proven beyond a reasonable doubt the element of malice in a second degree murder charge. This we decline to do.

Our Supreme Court has on numerous occasions rejected the contention that mental disease or incapacity should be considered on the issue of specific intent to kill after premeditation and deliberation. *See, e.g., State v. Anderson*, 303 N.C. 185, 278 S.E. 2d 238 (1981); *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976). A mental disorder which is insufficient to establish legal insanity may not be used to negate premeditation and deliberation or specific intent. *State v. Kirkley*, 308 N.C. 196, 213, 302 S.E. 2d 144, 154 (1983); *Anderson*, 303 N.C. at 200, 278 S.E. 2d at 247. Moreover, even voluntary drunkenness, which may be used to negate specific intent or premeditation and deliberation in a first degree murder case, is no defense to the general intent crime of second degree murder. *State v. Couch*, 35 N.C. App. 202, 207, 241 S.E. 2d 105, 108 (1978).

Therefore, in a second degree murder case, evidence of a defendant's mental illness and alcoholism will not rebut the presumption of malice where the killing was accomplished by the intentional use of a deadly weapon. Consequently, the trial judge in the case before us did not err in refusing to instruct the jury on the lesser-included offense of voluntary manslaughter.

[5] In his fifth and final assignment of error, defendant contends that the trial court's instruction to the jury pursuant to G.S. 15A-1235 was premature. We find this contention to be meritless.

General Statute 15A-1235(c), sometimes referred to as "the dynamite charge," provides, "If it appears to the judge that the jury has been unable to agree, the judge may require the jury to continue its deliberations and may give or repeat the instructions provided in subsections (a) and (b)." Subsection (b) of 15A-1235 provides the following instructions:

(1) Jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

(2) Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors;

(3) In the course of deliberations, a juror should not hesitate to reexamine his own views and change his opinion if convinced it is erroneous; and

(4) No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors, or for the mere purpose of returning a verdict.

In the case at bar, the jury retired to begin its deliberations at 11:06 a.m. on 16 April 1986. The court recessed for lunch from 12:20 p.m. until 2:20 p.m., when the jury resumed its deliberations. At 2:40 p.m., the jury returned to the jury box requesting further instructions. The jury retired again at 2:45 p.m. At 3:30 p.m., when the court called the jury to the jury box in order to give jurors their afternoon break, the judge gave the jury the following additional charge:

Number one, that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment. Two, each juror must decide the case for himself or herself, but only after an impartial consideration of the evidence with his or her fellow jurors, and, three, that in the course of deliberations a juror should not hesitate to reexamine his or her own views and change his or her opinion, if convinced it is erroneous, and, fourth, that no juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict. Now, the Court wants to emphasize, Ladies and Gentlemen, that it is the jury's duty to do whatever it can to reach a verdict, if it can be done. You should reason and discuss the matter over together as reasonable men and women and reconcile any differences, if you can without the surrender of any con-

scientious convictions, but the Court would mention that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of his or her fellow jurors or for the mere purpose of returning a verdict.

Defendant contends that the giving of a "dynamite charge" when the jury has been deliberating less than two hours and where there is no indication that the jury is deadlocked is prejudicial error for which defendant should receive a new trial. However, whether or not to give an instruction pursuant to G.S. 15A-1235(c) is clearly within the sound discretion of the trial judge. *State v. Williams*, 315 N.C. 310, 326-327, 338 S.E. 2d 75, 85 (1986). Defendant has failed to show any abuse of discretion.

In any case, the additional charge to the jury was not prejudicial to defendant. In *State v. Easterling*, 300 N.C. 594, 268 S.E. 2d 800 (1980), our Supreme Court held that where the record provided no indication that the jury was deadlocked in its deliberations or in any other way open to pressure by the trial judge to force a verdict, even a charge that is in part impermissible under G.S. 15A-1235 is not prejudicial error requiring a new trial. In the case before us, the contents of the charge were entirely proper under G.S. 15A-1235. Moreover, the charge was given during a break in the deliberations, and no inquiry was made nor indication given as to the numerical division of the jury. After considering the circumstances under which the additional instructions were given and the probable impact of those instructions on the jury, as we are required to do under *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978), we hold that any error in the court's decision to instruct the jury pursuant to G.S. 1235(c) in the absence of any indication of deadlock was not prejudicial to defendant.

After careful review of each assignment of error, we are satisfied that defendant received a fair trial free of prejudicial error.

No error.

Judges MARTIN and COZORT concur.