STATE OF NORTH CAROLINA v. DAVID DEESE

No. COA99-74

(Filed 18 January 2000)

## 1. Confessions and Incriminating Statements— second-degree murder—motion to suppress

The trial court did not err in a second-degree murder case by denying defendant's motions to suppress his 2 August 1995 and 7 August 1995 statements to law enforcement officers because the officers were not required to give defendant Miranda warnings since defendant was not in custody on either occasion when he made the statements, and the statements were voluntarily and knowingly made, as evidenced by the facts that: (1) defendant was permitted to arrange the first interview at a time convenient to him and at his request, and the officers provided transportation from his residence to the courthouse and back; (2) defendant was told on both occasions that he was not under arrest, that he was free to leave at anytime, and that he would be driven home upon request; (3) defendant was not restrained in any manner and he was left alone in an open room during the first interview; (4) defendant was neither coerced nor threatened; and (5) defendant was cooperative at all times, demonstrating for the officers the manner in which the victim was killed and even agreeing at one point to wear a wire in an unsuccessful attempt to elicit incriminating statement from two co-participants.

## 2. Evidence— prior bad acts—State witness—juvenile adjudication—fair determination of guilt or innocence

The trial court did not abuse its discretion in a second-degree murder case by excluding evidence of a State witness's prior bad acts concerning her juvenile adjudication of guilt of involuntary manslaughter in South Carolina, even though defendant sought to use it to impeach the witness, because the trial court concluded that defendant had not satisfied the court that the admission of

this evidence was necessary to a fair determination of defendant's guilt or innocence under N.C.G.S. § 8C-1, Rule 609.

3. **Evidence— prior bad acts—State witness—cutting victim after alcohol and drug use—not sufficiently similar**

The trial court did not abuse its discretion in a second-degree murder case by excluding evidence of a State witness's prior bad acts concerning an incident in which the witness and her brother had cut a third person with a broken bottle, even though defendant sought to use it under N.C.G.S. § 8C-1, Rule 404(b) to show a common plan or scheme in order to point to the witness as the perpetrator rather than defendant, because: (1) evidence offered to show the guilt of someone other than defendant must, to be relevant, do more than create an inference; (2) there were no similarities shown or contended by defendant, other than the occurrence of a cutting after an episode of alcohol and drug use at which the witness was present; and (3) defendant's own statements acknowledge his presence at the scene of the crime and corroborate the witness's testimony that she remained inside the car and had no involvement in the attack.

4. **Appeal and Error— preservation of issues—constitutional issues—failure to raise in trial court**

Although defendant in a second-degree murder case contends the trial court's exclusion of evidence violated his Sixth Amendment right to confront his accusers and present a defense, this constitutional argument is not considered because it was neither asserted nor determined in the trial court.

On writ of certiorari to review the judgment entered 28 March 1996 by Judge William C. Gore, Jr., in Columbus County Superior Court. Heard in the Court of Appeals 17 November 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Elizabeth N. Strickland, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

MARTIN, Judge.

On 28 March 1996, defendant was convicted of second degree murder in connection with the death of Carolyn Ruth Clarida on 10 July 1995. He gave notice of appeal from the judgment entered upon his conviction but his right to appeal was lost by the failure of his

then counsel to timely perfect the appeal. We allowed his petition for writ of certiorari pursuant to N.C.R. App. P. 21 by order dated 25 August 1998 and his present counsel was subsequently appointed.

Briefly summarized, the State's evidence at trial tended to show that on the evening of 10 July 1995, defendant, Ms. Clarida, Katrina Jackson, Jimmy Carlson, Tom Reaves, and Reaves' stepson, Billy, were at Reaves' home drinking liquor and beer and smoking crack cocaine. During the course of the evening, Carlson and defendant sought sex from Ms. Clarida; she refused their requests. The group left Reaves' house, with Reaves driving, and went to a convenience store to get more beer. Reaves then drove to an area known as the Big Bay where he stopped the car. Reaves, Carlson, defendant, and Ms. Clarida got out of the car. The men continued their efforts to have sex with Ms. Clarida. When she continued to refuse, Carlson, Reaves, and defendant began pulling at her clothes, touching her body, slapping her, and kicking her. Katrina Jackson, who had remained in the car, testified that Ms. Clarida was asking for help, but Ms. Jackson did not help her because she was afraid. Ms. Jackson testified that Reaves got a knife out of the car, that both Carlson and defendant stabbed Ms. Clarida, and that Reaves cut her throat. While she was still moaning, the three men threw her toward the woods into a ditch. The men got into the car, where Ms. Jackson pretended to be "drunk asleep;" she noticed blood on Reaves and defendant. The group returned to Reaves' house. Ms. Clarida's body was discovered by a truck driver the following afternoon. A medical examiner testified the cause of her death was the wound to her neck, although there were seven potentially fatal wounds to her body.

On 2 August 1995, defendant was interviewed by Agents West, Warner and Williams of the State Bureau of Investigation. Defendant, who was not under arrest at the time, gave a statement in which he acknowledged having seen Reaves and Carlson hitting and stabbing Ms. Clarida, but he denied having taken part in the attack. He was returned to his home by Agent Warner after the interview.

On 7 August 1995, Agents Warner and Williams interviewed defendant again and he gave a second statement in which he indicated that Reaves had cut Ms. Clarida's throat while Carlson held her. He accompanied the officers to the crime scene and demonstrated how Ms. Clarida had been killed. The agents took defendant home after the interview. A warrant for his arrest was issued on 9 August 1995.

Defendant offered evidence of alibi, as well as evidence that other persons had motives to kill Ms. Clarida, including her husband, Wellish Clarida, and her boyfriend, Terry Garrell, who was the father of two of her children. In addition, defendant offered the testimony of several truck drivers who had driven along the road where Ms. Clarida's body was found, but had not seen the body earlier in the day when they had passed the place where it was found. He also offered medical testimony with respect to the condition of Ms. Clarida's body when it was found, suggesting that it had been moved from one place to another before it was found.

---

Defendant brings forward assignments of error relating to the denial of his motions to suppress his 2 August 1995 and 7 August 1995 statements and the trial court's exclusion of evidence of prior bad acts by the State's witness, Katrina Jackson. The remaining assignments of error set forth in the record on appeal are deemed abandoned, as they are neither presented nor discussed in defendant's brief. N.C.R. App. P. 28(a), 28(b)(5). We find no error.

I.

[1] Prior to trial, defendant filed a motion to suppress, *inter alia*, evidence of the statements which he made to law enforcement officers on 2 August 1995 and 7 August 1995. He assigns error to the denial of the motion and to the admission of the statements into evidence, arguing he was not advised of his constitutional rights against self-incrimination and to counsel, as explained by the United States Supreme Court in the landmark decision of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694 (1966). It is well-established that *Miranda* warnings are required only where a defendant is subjected to a custodial interrogation. *State v. McNeill*, 349 N.C. 634, 509 S.E.2d 415 (1998), *cert. denied*, 120 S.Ct. 102 (1999).

After hearing evidence upon defendant's motion to suppress, the trial court made extensive findings of fact which included findings that defendant was initially approached by a Columbus County detective on the evening of 2 August 1995 at a grocery store in Tabor City and was told that officers wished to speak with him in connection with a murder investigation. Defendant agreed to speak with the officers but requested to do so at a later time if the officers would pick him up at his house after he took his groceries home. The detective related the information to SBI Agents West, Warner and Williams, who went to defendant's residence later that evening. Defendant

accompanied the agents to the Tabor City courthouse. He was told that he was not under arrest, that he was free to leave at any time, and that he would be returned to his home. At one point during the interview, the agents left the interview room to use the bathroom, leaving the defendant alone with the door open. After the agents had completed their business with defendant, he was taken to his home. .

On 7 August, the officers went to defendant's residence and requested to speak with him further about the investigation. He was told that he was not under arrest, and he agreed to accompany the officers to the Tabor City police station and then to the scene of the crime. The officers returned defendant to his home after approximately two hours.

From those findings, the trial court concluded the officers were not required to give defendant *Miranda* warnings because defendant was not in custody on either occasion when he made the statements to the officers. The trial court further concluded the statements were voluntarily and knowingly made.

A trial court's findings of fact made after a *voir dire* hearing are conclusive on appeal if the findings are supported by competent evidence in the record, even if there is conflicting evidence which would support contrary findings. *State v. Torres*, 330 N.C. 517, 412 S.E.2d 20 (1992). Whether a defendant is in custody for the purposes of *Miranda* is, however, a legal question which is fully reviewable on appeal. *Id.*; *State v. Hall*, 131 N.C. App. 427, 508 S.E.2d 8 (1998), *affirmed*, 350 N.C. 303, 513 S.E.2d 561 (1999).

The test for whether a person is in custody for *Miranda* purposes is whether, under the facts and circumstances then existing, "a reasonable person in the suspect's position would feel free to leave or compelled to stay." *McNeill* at 644, 509 S.E.2d at 421; *Torres* at 525, 412 S.E.2d at 24; *State v. Campbell*, 133 N.C. App. 531, 536, 515 S.E.2d 732, 736, *disc. review denied*, 351 N.C. 111, —— S.E.2d —— (1999). "Miranda warnings are not required simply because the questioning takes place in the police station or other 'coercive environment' or because the questioned person is one whom the police suspect of criminal activity." *Campbell*, ·133 N.C. App. at 536, 515 S.E.2d at 736 (citing *Oregon v. Mathiason*, 429 U.S. 492, 50 L.Ed.2d 714, (1977)).

In this case, defendant was permitted to arrange the first interview at a time convenient to him; at his request, the officers provided

transportation from his residence to the courthouse and back. Defendant was told on both occasions that he was not under arrest, that he was free to leave at any time, and that he would be driven home upon request. He was not restrained in any manner; in fact, he was left alone in an open room during the first interview. He was neither coerced nor threatened. Defendant was cooperative at all times, demonstrating for the officers the manner in which the victim was killed and even agreeing at one point to wear a body wire in an unsuccessful attempt to elicit incriminating statements from Reaves and Carlson. Considering the totality of the circumstances, we agree with the trial court's conclusion that defendant was not in custody on either occasion when he made statements to law enforcement officers and we find no error in the denial of his motion to suppress those statements. *See State v. Martin*, 294 N.C. 702, 242 S.E.2d 762 (1978); *State v. Blackman*, 93 N.C. App. 207, 377 S.E.2d 290 (1989).

II.

**[2]** The State filed a pre-trial motion *in limine* to prohibit defendant from cross-examining the State's witness, Katrina Jackson, concerning her juvenile adjudication of guilt of involuntary manslaughter in South Carolina, or from presenting other evidence with respect to the adjudication. The trial court allowed the motion and defendant assigns error.

At trial, defendant contended the evidence was admissible pursuant to Rule 609 to impeach Ms. Jackson's credibility, though he argued, in addition, that the fact that both victims died as a result of stab wounds somehow rendered the evidence relevant. G.S. § 8C-1, Rule 609, as effective at the time of defendant's trial, provided in pertinent part:

> (a) For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime punishable by more than 60 days confinement shall be admitted if elicited from him or established by public record during cross-examination of thereafter.

> . . .

> (d) Evidence of juvenile adjudications is generally not admissible under this rule. The court may, however, in a criminal case allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to

attack the credibility of an adult and the court is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence.

N.C. Gen. Stat. § 8C-1, Rule 609(a) and (d). The decision whether the "evidence is necessary for a fair determination of the issue of guilt or innocence" is within the sound discretion of the trial court. *State v. Whiteside*, 325 N.C. 389, 383 S.E.2d 911 (1989). After hearing the motion in limine in this case, the trial court concluded that defendant had not satisfied the court that the admission of evidence concerning Ms. Jackson's juvenile adjudication of involuntary manslaughter was necessary to a fair determination of defendant's guilt or innocence, essentially a determination that the evidence was not relevant. Defendant has shown no abuse of discretion in the trial court's ruling to exclude irrelevant evidence, and we find none.

**[3]** Subsequently, during his cross-examination of Ms. Jackson, defendant again sought to question her with respect to the juvenile adjudication and, in addition, with respect to an incident in which Ms. Jackson and her brother had cut a third person with a broken bottle. Defendant argued the evidence was relevant, pursuant to G.S. § 8C-1, Rule 404(b), to show "a common plan or scheme . . . [to] get a knife or bottle, or whatever, and cut somebody after drinking and drugs are involved," in order to show that Katrina Jackson was the perpetrator rather than defendant. In his brief, defendant continues to argue the evidence was relevant to show that someone other than defendant, perhaps even Ms. Jackson, had committed the offense.

Evidence offered to show the guilt of someone other than the defendant must, to be relevant, do more than create an inference; it must point directly to the guilt of the other party. *State v. Hamilton*, 351 N.C. 14, 519 S.E.2d 514 (1999). Where such evidence is offered to show the identity of the perpetrator, the *modus operandi* must be similar enough to make it likely that the same person committed both crimes. *Id.* Here, there were no similarities shown or contended by defendant other than the occurrence of a cutting after an episode of alcohol and drug use at which Katrina Jackson was present, creating no more than a very speculative inference of Ms. Jackson's involvement in the attack upon Ms. Clarida. Moreover, defendant's own statements acknowledge his presence at the scene of the crime and corroborate Ms. Jackson's testimony that she remained inside the car and had no involvement in the attack. Thus, we find no abuse of discretion in the trial court's exclusion of the evidence.

[4] Finally, defendant argues the trial court's exclusion of the evidence violated his Sixth Amendment right to confront his accusers and present a defense. We do not consider his constitutional argument because it was neither asserted nor determined in the trial court. *State v. Nobles*, 350 N.C. 483, 515 S.E.2d 885 (1999); *State v. Duncan*, 75 N.C. App. 38, 330 S.E.2d 481, *disc. review denied*, 314 N.C. 544, 335 S.E.2d 317 (1985).

Defendant received a fair trial, free from prejudicial error.

No error.

Judges LEWIS and WYNN concur.