STATE OF NORTH CAROLINA v. PERCELL WATKINS, JR., DEFENDANT

No. COA04-295

(Filed 5 April 2005)

**1. Homicide— short form indictment—attempted murder**

Defendant's short form indictment for attempted murder was fatally defective in that it failed to allege that defendant acted with the specific intent to kill. The application of N.C.G.S. § 15-144 (authorizing short form indictments for murder or manslaughter) to attempted murder goes beyond the plain language of the statute.

**2. Search and Seizure— permission by live-in girlfriend— constitutional**

A search of a shop outside a home was constitutional where defendant's live-in girlfriend (Riley) gave permission for the search. The court found that Riley had been defendant's girl-

STATE v. WATKINS

[169 N.C. App. 518 (2005)]

friend for thirteen years and had lived in defendant's home the entire time; her status as a resident of the home had been known by the officers seeking permission for the search for three or four years before the search; the officers had no reason to suspect that she did not have control over the premises, including the shop; and Riley's consent was voluntary and without hesitation.

### 3. Evidence— statements by defendant's girlfriend—admitted through officer's testimony—not prejudicial

There was no plain error in the admission of statements by defendant's girlfriend through the testimony of investigating officers. While the statements may have been admissible as corroboration of earlier testimony, the absence of the statements would not have changed the verdict in light of the other admitted evidence.

### 4. Constitutional Law— silence by defendant—incidental— not prejudicial

There was no plain error by admitting testimony that defendant had declined to make a statement to an officer. The testimony about defendant's silence was incidental to the entire testimony of the officer and it is doubtful that the jury assigned heavy weight to defendant's silence in light of the evidence against defendant.

### 5. Evidence— victim's identification of defendant—personal knowledge

There was no plain error in the admission of testimony from the victim of an attempted murder and assault that it was defendant who had shot him where the victim did not see defendant and based his testimony on what he perceived as the shooting occurred, particularly what he heard. The victim was defendant's uncle, had heard defendant's voice frequently, and had sufficient personal knowledge to identify defendant. N.C.G.S. § 8C-1, Rule 602.

### 6. Homicide— attempted murder—defendant as shooter—sufficiency of evidence

The evidence in an assault and attempted murder prosecution was sufficient for the jury to determine that defendant was the one who shot the victim.

STATE v. WATKINS

[169 N.C. App. 518 (2005)]

**7. Homicide— attempted murder—evidence of premeditation and deliberation—sufficient**

There was sufficient evidence of premeditation and deliberation in an attempted murder prosecution where defendant entered the victim's house without permission, a fight resulted when defendant broke the victim's television, defendant pulled a knife, he was seen later leaving his house with a gun in his truck, and he later yelled that he had "gotten one" after shooting the victim in the shoulder.

Appeal by defendant from judgment entered 29 August 2003 by Judge W. Osmond Smith, III in Caswell County Superior Court. Heard in the Court of Appeals 16 November 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

ELMORE, Judge.

Defendant appeals convictions of attempted murder and assault with a deadly weapon with intent to kill inflicting serious injury. Among the grounds for appeal, defendant argues that the trial court admitted improper evidence and erred by not granting defendant's motion to dismiss. Defendant also argues that his conviction for attempted murder must be vacated. For the reasons stated herein, we find no error at trial but vacate defendant's judgment for attempted murder.

Defendant was indicted on 9 April 2002 for attempted murder and 13 May 2003 for assault with a deadly weapon with intent to kill inflicting serious injury. Following several days of trial, on 29 August 2003 a jury found defendant guilty of both crimes.

I.

The events giving rise to these convictions occurred on 22 November 2001, which was Thanksgiving Day. Defendant was living in a house located on a large family farm in rural Caswell County. Other members of defendant's family lived in separate houses on the farm, including the victim, Walter Bigelow (Bigelow), who was defendant's uncle. On Thanksgiving morning, defendant, Bigelow, and

two other friends met at Bigelow's house and began drinking gin, beer, and liquor. After drinking for several hours, the men went to the home of a friend to see his new puppies. Defendant was bitten by the mother dog after he took off his shirt and attacked the dog.

Following defendant and Bigelow's return to Bigelow's house, defendant wanted to continue drinking and entered the house against Bigelow's wishes. While he was inside, defendant stumbled into Bigelow's television and broke the screen. During a scuffle that followed, defendant pulled out a knife. Bigelow kicked the knife out of defendant's hand and threatened to call the police. Defendant then walked out into Bigelow's yard and eventually left in his truck after backing into Bigelow's fence.

At about 2:30 p.m. on the same day, Bigelow and his brother, Huston Bigelow (Huston), were walking near their mother's house when Bigelow was struck in the shoulder by two gunshots. As he fell to the ground, he heard defendant yell, "I got one of the SOBs." Huston testified that after additional shots were fired, he heard defendant yell, "I got one now and I got one more to go."

Officer Clayton Myers of the Caswell County Sheriff's Department arrived shortly after the shooting and interviewed Donita Riley (Riley), defendant's girlfriend. Officer Myers testified that during their conversation, Riley said defendant had left his home earlier with a scoped rifle to go hunting. As part of his investigation, Officer Myers called in a bloodhound to search the area where the shots had likely been fired. The bloodhound led the officers to a piece of camouflage cloth hanging from a barbed wire fence. From there, the bloodhound followed a trail to defendant's house.

During the investigation, officers asked Riley, who lived in defendant's house, for permission to enter a shop building located near the house. Riley initially refused, but she gave officers a key to the shed after they told her they would get a warrant and tear down the door. At that time, Riley also signed a form stating that she consented to the search. Inside the building, officers found a vehicle that defendant was working on along with a .22 rifle and bullets on the floorboard. In addition, when officers asked Riley for defendant's camouflage pants, she provided a pair with a missing swatch of cloth. Officers determined that the swatch of cloth recovered from the barbed wire fence perfectly matched the hole in defendant's pants.

## II.

**[1]** In his first assignment of error, defendant contends that the indictment for "attempted murder" is defective since it lacks allegations that defendant acted with the specific intent to kill, premeditation, or deliberation. Defendant's indictment stated:

> The jurors for the State upon their oath present that on or about [November 22, 2001] and in . . . [Caswell County] the defendant named above unlawfully, willfully and feloniously did of malice and aforethought attempt to kill and murder Walter Bigelow.

This indictment for attempted murder follows the language authorized by N.C. Gen. Stat. § 15-144 for short-form indictments for murder or manslaughter.

This Court has issued inconsistent opinions on whether the language authorized in section 15-144 states all the essential elements for *attempted* murder. Most recently in *State v. Jones*, 165 N.C. App. 540, 598 S.E.2d 694, *temp. stay allowed*, 358 N.C. 736, 601 S.E.2d 202, *disc. review granted*, 359 N.C. 73, 604 S.E.2d 924 (2004), a panel of this Court determined that an indictment following the short-form language in section 15-144 did not allege all the essential elements of the crime of attempted murder and must be vacated. Yet, in *State v. Andrews*, 154 N.C. App. 553, 559-60, 572 S.E.2d 798, 803, *cert. denied*, 358 N.C. 156, 592 S.E.2d 696 (2004), as well as *State v. Choppy*, 141 N.C. App. 32, 41, 539 S.E.2d 44, 50-51 (2000), *disc. review denied*, 353 N.C. 384, 547 S.E.2d 817 (2001), this Court determined that attempted murder indictments following section 15-144 were constitutional.

None of these cases dealt with the statutory argument that defendant raises here. Defendant argues that the plain language of section 15-144 limits its application to cases of "murder or manslaughter," not attempted murder. Notably, defendant argues that the short-form language found in section 15-144.1, dealing with rape, and section 15-144.2, dealing with sex offense, include "attempt" within the statute whereas section 15-144 does not. While our appellate opinions are replete with occasions in which our Supreme Court has upheld the constitutionality of using section 15-144 to allege murder, there is no authority on point that specifically applies the language in N.C. Gen. Stat. § 15-144 to attempted murder.[1] Both *Andrews*

---

1. We note that our appellate holdings have properly allowed attempted murder to be presented to the jury as a lesser included offense of murder, see N.C. Gen. Stat. § 15-170; but here, attempted murder is the charged offense, not a lesser included offense.

and *Choppy* applied North Carolina Supreme Court opinions holding that section 15-144 is constitutional for *murder* indictments as their precedent for holding that N.C. Gen. Stat. § 15-144 states all the essential elements for the crime of *attempted* murder.

We agree with defendant that the application of N.C. Gen. Stat. § 15-144 to indictments for attempted murder goes beyond the plain language of the statute. Absent statutory authority for a short-form indictment, the State must allege all essential elements of the crime charged. *See State v. Hunt*, 357 N.C. 257, 267, 582 S.E.2d 593, 600 (2003) ("To be sufficient under our Constitution, an indictment 'must allege lucidly and accurately all the essential elements of the offense endeavored to be charged.'" (quoting *State v. Greer*, 238 N.C. 325, 327, 77 S.E.2d 917, 919 (1953)). "Nothing in G.S. 15-153 or in G.S. 15-155 [statutes dealing with certain informalities and defects that do not vitiate a warrant or indictment] dispenses with the requirement that the essential elements of the offense must be charged." *State v. King*, 285 N.C. 305, 308, 204 S.E.2d 667, 669 (1974) (internal quotations omitted).

"The elements of an attempt to commit a crime are: '(1) the intent to commit the substantive offense, and (2) an overt act done for that purpose which goes beyond mere preparation, but (3) falls short of the completed offense.'" *State v. Coble*, 351 N.C. 448, 449, 527 S.E.2d 45, 46 (2000) (internal quotations omitted). As a necessary element of attempted murder, the specific intent to kill must be alleged in the indictment. *See id.*, 351 N.C. at 451, 527 S.E.2d at 48 ("[T]he crime of attempted murder is logically possible only where specific intent to kill is a necessary element of the underlying offense."); *State v. Jerrett*, 309 N.C. 239, 259, 307 S.E.2d 339, 350 (1983) (Absent adoption of a short-form indictment by the General Assembly, each essential element must be alleged).

Accordingly, we hold that an indictment for attempted murder must allege the necessary element of specific intent to kill. *See Jones v. United States*, 526 U.S. 227, 232, 143 L. Ed. 2d 311, 319 (1999) (holding that elements of the offense must be charged in the indictment). An indictment for *attempted* murder is not constitutional when it only complies with the language of N.C. Gen. Stat. § 15-144, a section that remains untarnished when applied as plainly intended: to indictments for murder and manslaughter. *See State v. Holder*, 138 N.C. App. 89, 93, 530 S.E.2d 562, 565 (holding that *Jones* did not invalidate North Carolina's short-form indictment for murder), *disc. review denied*, 352 N.C. 359, 544 S.E.2d 551 (2000). Defendant's indictment for

attempted murder failed to allege that defendant acted with the specific intent to kill, and this omission was fatally defective.

## III.

[2] Defendant next argues that the search of the shop outside of his house was unconstitutional and the evidence obtained therein should have been suppressed. Specifically, defendant argues that Riley did not have the apparent authority to authorize the search and did not provide valid consent for the search. When reviewing a trial court's ruling on a motion to suppress, the trial court's findings of fact "are conclusive on appeal if supported by competent evidence, even if the evidence is conflicting." *State v. Brewington*, 352 N.C. 489, 498, 532 S.E.2d 496, 501 (2000) (internal quotations omitted), *cert. denied*, 531 U.S. 1165, 148 L. Ed. 2d 992 (2001); *see also State v. Barnett*, 307 N.C. 608, 613, 300 S.E.2d 340, 343 (1983).

Resolving any conflict within the evidence, the trial court found that Riley was defendant's girlfriend for thirteen years and had resided in defendant's home for the entire time. Further, the trial court found that Riley's status as a resident of the home was known to those officers seeking permission for approximately three to four years and that officers had no reason to suspect she did not have control over the premises, including the shop that was determined to be located within the curtilage of the home. Notably, the trial court found that Riley's consent was voluntary and without hesitation. Despite some evidence to the contrary, we see no reason to determine that these findings were not supported by the evidence.

"Once this Court concludes that the trial court's findings of fact are supported by the evidence, then this Court's next task 'is to determine whether the trial court's conclusion[s] of law [are] supported by the findings.'" *Brewington*, 352 N.C. at 498-99, 532 S.E.2d at 502 (quoting *State v. Hyde*, 352 N.C. 37, 45, 530 S.E.2d 281, 288 (2000)). This Court has previously determined that officers may rely on the consent of third-parties who have apparent control over the area requested to be searched. *See State v. Jones*, 161 N.C. App. 615, 620, 589 S.E.2d 374, 377 (2003) ("One who shares a house or room or auto with another understands that the partner, may invite strangers[, and that his] privacy is not absolute, but contingent in large measure on the decisions of another. Decisions of *either* person define the extent of the privacy involved . . .") (internal quotations omitted); *see also State v. Garner*, 340 N.C. 573, 592, 459 S.E.2d 718, 728 (1995) ("A third party may give permission to search where the third party possesses

common authority over or other sufficient relationship to the premises or effects sought to be inspected.") (internal quotations omitted). Based on its findings, the trial court did not err in determining that the search and subsequent seizure of property did not offend the Constitution.

IV.

[3] Defendant's next three assignments of error all deal with the alleged erroneous admission of evidence. Since defendant did not object to any of these admissions, we review them for plain error. Under this standard of review, "defendant has the burden of showing: '(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial.' " *State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 (2004) (quoting *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997)).

Defendant first contends that the trial court erred by admitting statements of Riley through the testimony of Officer Myers and Officer Eugene Riddick, another officer with the Caswell County Sheriff's Office investigating the shooting. The officers testified that Riley told them on 22 November 2001 defendant came home to get a long gun with a scope, telling her that he was going hunting. Reporting from their notes, they further testified she told them defendant was drunk, irate, bleeding from the face, and fell out the door. The officers also noted that Riley had told them defendant and Bigelow did not get along and defendant was becoming more uncontrollable.

The State argues that Riley's statements corroborated her earlier testimony where she described for the jury a substantially similar course of events. While we may be inclined to find that Riley's statements corroborated her earlier testimony, and thus were admissible, we are convinced that the absence of these statements would not have changed the jury's verdict. *See State v. Howard*, 320 N.C. 718, 724, 360 S.E.2d 790, 793-94 (1987) (discussing corroborative testimony). The jury heard evidence of an earlier fight between defendant and Bigelow; positive voice identification of defendant as the shooter by two people who had known him his whole life; the fact that police had tracked defendant from the scene of the shooting and were able to connect the pants he was wearing to cloth found at the scene; and that defendant had a long rifle in his truck. Thus, this assignment of error is overruled.

**[4]** Next, defendant contends that the trial court erred in admitting testimony that at various times he declined to make a statement to investigators. We disagree.

At trial, Officer Myers testified about his interaction with defendant during defendant's arrest. He said that defendant had been drinking, was found hiding in a shower, and charged at an officer once he was discovered. The State then asked Officer Myers questions regarding defendant's demeanor following his arrest. It was in answering these questions that Officer Myers described instances in which defendant refused to make a statement.

A defendant has the right to remain silent, and the State cannot use his exercise of that right as evidence that he is guilty. *State v. Ladd*, 308 N.C. 272, 283, 302 S.E.2d 164, 171 (1983) ("We have consistently held that the State may not introduce evidence that a defendant exercised his fifth amendment right to remain silent."). Nonetheless, when reviewed for plain error, a witness's incidental testimony that a defendant exercised his right to silence may be a *de minimis* violation and not prejudicial. *See, e.g., Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. Under these circumstances, Officer Myers's testimony regarding defendant's exercise of his right to silence was incidental to Myers's testimony in its entirety.

Moreover, it is doubtful that the jury assigned heavy weight to defendant's exercise of his right to silence in light of the evidence against him. Accordingly, we find that no error occurred here.

**[5]** Concluding our plain error review, defendant states that the trial court erred by admitting Bigelow's testimony that it was defendant who shot him. We disagree.

Rule 602 of the North Carolina Rules of Evidence does provide that "a witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." N.C. Gen. Stat. § 8C-1, Rule 602 (2003). Yet, the Rule's official commentary states that "personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception." N.C. Gen. Stat. § 8C-1, Rule 602 (Commentary) (2003); *see also State v. Poag*, 159 N.C. App. 312, 323, 583 S.E.2d 661, 669 (2003). Although Bigelow did not see defendant shoot him, his testimony was based on what he perceived as the shooting occurred. In particular, Bigelow testified that he heard defendant shout, "I got one of the SOBs" while he was falling. Bigelow, as defendant's uncle,

was certain it was defendant's voice because he heard defendant's voice "all the time." As confirmation of Bigelow's testimony, Huston, Bigelow's brother, testified that he also heard defendant's voice shortly after the shooting and that he had known defendant "since the day he was born." As a result, we conclude that Walter Bigelow had sufficient personal knowledge to identify defendant and that his opinion was rationally based on his perception of the shooting. *See* N.C. Gen. Stat. § 8C-1, Rule 701 (2003) (opinion testimony is "limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.").

V.

[6] In defendant's final two assignments of error, he asserts that the State presented insufficient evidence to 1) identify him as the shooter, and 2) establish premeditation and deliberation.

When a defendant moves for dismissal, "the trial court is to determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense." *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Substantial evidence is that evidence which " 'a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). In determining whether the State's evidence is substantial, the trial court must examine the evidence in the light most favorable to the State, and the State is entitled to every reasonable inference and intendment that can be drawn therefrom. *Id.* at 237, 400 S.E.2d at 61 (citing *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980)).

In the light most favorable to the State, we conclude that there was ample evidence for the jury to determine that defendant was the one that shot Walter Bigelow. In particular, the evidence showed that defendant and Bigelow fought with each other before the shooting and that defendant pulled a knife on Bigelow. The State also showed that after the fight, defendant sat in his truck and pointed a gun toward Bigelow's house. Both Bigelow and Huston identified defendant's voice as the voice they heard when the shooting occurred. In addition, Riley testified that she saw defendant leave shortly after 2:00 p.m. in his truck. Finally, when officers searched defendant's shop building, they found a .22 rifle and bullets. Based on this evidence, we conclude that the trial court did not err in denying defendant's motion to dismiss.

**[7]** Defendant also argues that the evidence was insufficient to establish premeditation or deliberation. Our Supreme Court has stated that premeditation "means that the act is thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Jones*, 342 N.C. 628, 630, 467 S.E.2d 233, 234 (1996) (internal quotations omitted). The Court has also defined deliberation as "an intention to kill, executed by the defendant in a cool state of the blood, in furtherance of a fixed design to gratify a feeling of revenge, or to accomplish some unlawful purpose . . ." *State v. Wise*, 225 N.C. 746, 749, 36 S.E.2d 230, 232 (1945) (internal quotations omitted).

To determine whether evidence shows premeditation and deliberation, a court should consider the following factors: "(1) lack of provocation by the deceased; (2) conduct and statements of the defendant before and after the killing; and (3) 'ill-will or previous difficulty between the parties.' " *State v. Hood*, 332 N.C. 611, 622, 422 S.E.2d 679, 685 (1992) (quoting *State v. Williams*, 308 N.C. 47, 69, 301 S.E.2d 335, 349 (1983)).

Taken in the light most favorable to the State, evidence at trial tended to show that defendant entered Bigelow's house without his permission, a fight resulted when defendant broke Bigelow's television, and defendant pulled a knife on Bigelow. Riley testified that ill-will had developed between defendant and Bigelow. Defendant left his house with a gun in his truck and after shooting Bigelow in the shoulder yelled out, "I got one now and I got one more to go." There is more than ample evidence such that a jury could determine deliberation and premeditation beyond a reasonable doubt. Thus, defendant's final assignment of error is overruled.

VI.

For the foregoing reasons, we conclude that defendant's conviction based on the indictment for attempted murder must be vacated. However, there was no error regarding defendant's trial on the remaining charge of assault with a deadly weapon with intent to kill inflicting serious bodily injury.

Vacated in part, no error in part.

Judges WYNN and HUDSON concur.