STATE OF NORTH CAROLINA v. MAURICE STREETER

No. COA08-08

(Filed 5 August 2008)

### 1. Evidence— victim's prior statements—corroboration— additional details—curative instruction

The trial court did not err in an assault prosecution by admitting the testimony of an officer about a victim's prior statements for corroborative purposes. The statements that defendant contends were not corroborative merely provide additional details, immaterial to defendant's guilt, and the trial court gave a curative instruction prohibiting consideration of any non-corroborative statements. Moreover, there was other evidence of guilt and the jury would not have reached a different result even without the testimony.

### 2. Criminal Law— prosecutor's closing argument—witness's prior statements—properly admitted

There was no plain error in an assault prosecution where the prosecutor used a witness's prior statements in her closing argument. The prosecutor may refer to any evidence presented at trial in her closing argument, and these statements had been admitted as corroborating evidence.

### 3. Criminal Law— instructions—defense of accident not included

There was no plain error in an assault prosecution from the trial court not instructing the jury on the defense of accident. The only evidence of accident was defendant's statement, and the possibility of a different verdict is too remote to meet the test of plain error.

### 4. Criminal Law— inquiry into division of jury—*Allen* charge—two hours into deliberations

The trial court did not abuse its discretion when it inquired into the numerical division of the jury and gave an *Allen* instruction two hours into deliberations. The inquiry was reasonable so that the court could plan for the afternoon recess and the following day, the court was not impatient toward the jury, and it did not take any action to coerce or intimidate the jury into reaching a verdict.

**5. Criminal Law— clerical errors in judgment—remand for correction**

A conviction for assault was remanded for correction of clerical errors in the date of judgment and the date of the offense. It is important that the record speak the truth.

Appeal by defendant from judgment entered 16 August 2007 by Judge J.B. Allen, Jr., in Durham County Superior Court. Heard in the Court of Appeals 10 June 2008.

*Attorney General Roy Cooper, by Assistant Attorney General John P. Barkley, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender David W. Andrews, for defendant-appellant.*

ELMORE, Judge.

On 16 August 2007, a jury found Maurice Frank Streeter (defendant), guilty of assault with a deadly weapon inflicting serious injury for shooting Atalaya Liles on 16 November 2006. The trial court sentenced defendant to a term of forty-six to sixty-five months' imprisonment. Defendant appeals the judgment entered against him. For the reasons stated below, we find no error in defendant's trial, but remand with instructions to correct clerical errors.

A Durham County grand jury indicted defendant on 5 February 2007 for attempted murder and assault with a deadly weapon with intent to kill inflicting serious injury. The State tried the case before a jury on 13 August 2007.

Ms. Liles testified that defendant shot her on 16 November 2006. She said that the previous day, she was outside of a store in Durham and bought drugs from A.P.[1] She later found out that the drugs were fake and confronted A.P. about it. A.P. told her that he would hang out with her until the following day, when he could get back to his house, where he lived with defendant, to repay her. Ms. Liles and A.P. then went to an abandoned house and spent the night there. The next morning, Ms. Liles left the abandoned house shortly after A.P. and followed him. When she caught up to A.P., he was talking with defendant. Defendant was asking A.P. where he had been all night. A.P. told defendant that the previous night, Ms. Liles had tried to "set him up" and "have him robbed." Defendant asked Ms. Liles if she tried to set

---

1. A.P. was a juvenile at the time and will be referred to by his initials.

A.P. up. When she responded that she had not, A.P. punched her in the face twice, causing her to fall to the ground. Defendant stood over Ms. Liles and continued asking her if she had "set [A.P.] up." When Ms. Liles said she had not, defendant shot her. She heard the gun fire about five or six shots.

Ms. Liles was later taken to the hospital, where she was treated for four bullet wounds. Durham Police Officer K.D. Emanuel interviewed Ms. Liles at the hospital and she gave him a description of defendant.

Based on Ms. Liles' description, the Durham Police Department located defendant within an hour and arrested him. Although defendant initially denied being present when Ms. Liles was shot, he eventually told Officer Emanuel that his gun had accidently discharged while he was trying to separate A.P. and Ms. Liles. The SBI performed a gunshot residue analysis on defendant's hands, which indicated the presence of gunshot residue. Defendant's gun was never found.

On 4 January 2007, Officer Emanuel located Ms. Liles and interviewed her again. Officer Emanuel had another police officer administer a photo line-up, from which she identified defendant's photograph.

On 16 January 2007, Ms. Liles met with defendant's attorney and signed an affidavit stating that defendant did not shoot her and that the person who shot her had darker skin than defendant. At trial, Ms. Liles testified that the affidavit was false and said that she had signed it because defendant's mother had offered her $500.00 to say that defendant did not shoot her.

In order to corroborate Ms. Liles's testimony at trial, the State introduced Officer Emanuel to testify about Ms. Liles's prior statements to him. As soon as the State began questioning Officer Emanuel about his previous conversation with Ms. Liles, defendant objected to Officer Emanuel testifying about any of Ms. Liles's prior statements. The trial court responded by giving the jury instructions to disregard any non-corroborative evidence. Defendant continued to object and the trial court gave defendant a standing objection.

Officer Emanuel testified that on 4 January 2007, he located Ms. Liles and interviewed her. Ms. Liles told him the following: She met A.P. outside of a convenience store on 15 November 2006 and obtained drugs from him. Ms. Liles gave the drugs to a friend, who later told her that the drugs were fake. When Ms. Liles

confronted A.P., he denied giving her fake drugs. While A.P. and Ms. Liles were talking, defendant called out to A.P. and A.P. did not respond. As defendant was calling out to A.P., A.P. told Ms. Liles, "That's my O.G."[2] She and A.P. then went to an abandoned house and spent the night there. The following day, Ms. Liles found A.P. talking with defendant. When she approached A.P. and asked if he was going to pay her, A.P. responded that she had "set him up." Defendant told A.P. to "handle his business" and A.P. punched Ms. Liles. After Ms. Liles fell to the ground, defendant pulled out a gun and fired approximately six shots. Ms. Liles also told Officer Emanuel that defendant's mother had previously contacted her and offered her money to not testify against defendant.

After the jury had deliberated for approximately two hours, the trial court inquired into the numerical division of the jury. When the foreperson responded that he did not know how to answer, the trial court gave an *Allen* instruction to the jury. Defendant objected.

On 16 August 2007, the jury returned verdicts of not guilty of attempted murder and guilty of assault with a deadly weapon inflicting serious injury. Defendant gave oral notice of appeal.

I.

[1] Defendant first argues that the trial court erred when it allowed Officer Emanuel to testify about Ms. Liles's prior statements in order to corroborate her testimony. Defendant contends that Ms. Liles's prior statements contradicted her testimony and were improperly used as substantive evidence. Defendant asserts that he is entitled to a new trial, arguing that if those statements had not been introduced, the jury probably would have reached a different verdict. Defendant objected to this testimony during trial, and therefore, the issue has been properly preserved for appeal. *See* N.C.R. App. P. 10(b)(1) (2007). We will review the trial court's determination *de novo. State v. Hazelwood*, 187 N.C. App. 94, 98-99, 652 S.E.2d 63, 66 (2007) (reviewing *de novo* a trial court's finding that a defendant's prior statements were admissible).

Prior consistent statements of a witness may be admitted to corroborate the witness's courtroom testimony if the statements tend to "strengthen, confirm, or make more certain the testimony of another witness." *State v. Harrison*, 328 N.C. 678, 681, 403 S.E.2d 301, 303 (1991) (quoting *State v. Rogers*, 299 N.C. 597, 601, 264 S.E.2d

---

2. A.P. testified that "O.G." meant higher authority.

89, 92 (1980)). "[T]he witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony." *State v. McCree*, 160 N.C. App. 200, 207, 584 S.E.2d 861, 866 (2003) (citations omitted).

In *State v. Warren*, our Supreme Court held that the witness's prior statement that the defendant said that he planned to kill the victim did not corroborate the witness's testimony that the defendant said he had planned to rob the victim. 289 N.C. 551, 556-58, 223 S.E.2d 317, 320-21 (1976). In that case, the testimony and the prior statements of the witness were clearly contradictory as to whether the defendant had intended to kill the victim. *Id.* at 557, 223 S.E.2d at 321. Similarly in *McCree*, this Court held that the witness's prior statement that the defendant hit the victim with a handgun did not corroborate the witness's testimony that the defendant punched the victim because the witness's prior statement clearly contradicted whether the defendant used a deadly weapon. 160 N.C. App. at 207, 584 S.E.2d at 866.

Contrary to the facts in *Warren* and *McCree*, Ms. Liles's prior statements do not contradict her trial testimony. Her prior statements to Officer Emanuel are generally consistent with her trial testimony. The only statements that defendant argues went beyond Ms. Liles's testimony are the following: (1) on 15 November 2006, defendant called out to A.P. and A.P. ignored him, (2) A.P. told Ms. Liles that defendant was his "O.G.," and (3) on 16 November 2006, before A.P. hit Ms. Liles, defendant told A.P. to "handle his business." If previous statements offered in corroboration are generally consistent with the witness's testimony, additional facts do not render the statements inadmissible. *Harrison*, 328 N.C. at 681-82, 403 S.E.2d at 304.

We find that the trial court did not err in admitting Officer Emanuel's testimony about Ms. Liles's prior statements for corroborative purposes. A careful comparison of Ms. Liles's testimony with that offered by Officer Emanuel indicates that the two are substantially the same account of the events that occurred on 15 November 2006 and 16 November 2006. "[P]rior consistent statements are admissible even though they contain new or additional information so long as the narration of events is substantially similar to the witness'[s] in-court testimony." *State v. Williamson*, 333 N.C. 128, 136, 423 S.E.2d 766, 770 (1992) (citations omitted).

Ms. Liles's prior statements to Officer Emanuel strengthened the credibility of her testimony at trial. Ms. Liles testified that she pur-

chased drugs from A.P. and was told that the drugs were fake, she spent the night with A.P. at an abandoned house, the next day A.P. told defendant she "set him up" and A.P. punched her, defendant questioned her about setting A.P. up, and that defendant shot her about five or six times. She had previously recounted all of that information to Officer Emmanuel. The statements that defendant contends were not corroborative of her testimony merely provide additional details, immaterial to defendant's guilt.

Nonetheless, variations between Ms. Liles's testimony and her prior statements affect only the weight and credibility of the evidence, not the admissibility. *State v. Benson*, 331 N.C. 537, 552, 417 S.E.2d 756, 765 (1992) (citations omitted); *Harrison*, 328 N.C. at 684, 403 S.E.2d at 305. It is the responsibility of the jury to determine a witness's credibility and to decide if the proffered testimony does, in fact, corroborate the testimony of another witness. *State v. Jones*, 64 N.C. App. 505, 509, 307 S.E.2d 823, 825 (1983).

Defendant further argues that the State improperly used Ms. Liles's prior statements as substantive evidence. Although prior statements may be introduced to corroborate in court testimony, the corroborative statements may not be used as substantive evidence. *State v. Stills*, 310 N.C. 410, 415-16, 312 S.E.2d 443, 447 (1984).

Even if Ms. Liles's prior statements had not corroborated her testimony, the trial court gave the following curative instructions to the jury: "[I]f [Officer Emanuel's testimony] corroborates what Ms. Liles has heretofore testified to, then you will consider it. If it does not corroborate her testimony, then you will disregard it." The trial court clearly explained to the jury that it could not consider any non-corroborative statements as evidence. We presume "that jurors . . . attend closely [to] the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given [to] them." *State v. Jennings*, 333 N.C. 579, 618, 430 S.E.2d 188, 208 (1993) (citations omitted). We conclude that the instructions the trial court gave were in accordance with the law and that the jury was able to follow the instructions as they were given and therefore find no error.

Even assuming *arguendo* that the trial court erred in allowing Ms. Liles's prior statements, defendant has not established that the error was prejudicial. The test for prejudicial error is whether there is a "reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial. . . ."

N.C. Gen. Stat. § 15A-1443(a) (2005); *State v. Frazier*, 344 N.C. 611, 617, 476 S.E.2d 297, 300 (1996).

It is entirely unlikely that the statements at issue had any serious effect on the trial's outcome. This Court finds that the State presented other evidence that the jury could have used to find defendant guilty. Ms. Liles testified that defendant shot her and identified him both in court and in a photo line-up. Furthermore, after being arrested, defendant admitted to Officer Emmanuel that he shot Ms. Liles by claiming that his gun had accidently discharged. We cannot find that the jury would have reached a different result if Officer Emanuel had not been permitted to testify about Ms. Liles's prior statements and therefore, we find no error.

II.

[2] Defendant next argues that the trial court erred in failing to intervene *ex mero motu* when the prosecutor improperly used Ms. Liles's prior statements during the State's closing argument. In the closing argument, the prosecutor made the following remarks, to which defendant assigns error:

If we look through all of the evidence, if we look to all the people who testified. [Ms. Liles] stated that she stayed the night with [A.P.], that she heard [defendant] call for [A.P.] [A.P.] didn't answer; that [A.P.] kept calling him his O.G. [A.P.] stated that this O.G. was a higher authority. He didn't answer that higher authority.

So the next day when [Ms. Liles] came up to him and said, what's going on, [A.P.] had to have a reason for not answering his O.G. During the interview he said that the reason was that [Ms. Liles] had set [A.P.] up for something, at which point [defendant] told [A.P.] you need to handle your business. You need to deal with your street stuff.

What did he do? [A.P.] punched [Ms. Liles]. He told [defendant] to shoot her. . . .

\*\*\*

This time we have a back story. This time we know more about what's going on. We know why [A.P.] wasn't answering his O.G. We know more. We know why.

Since defendant did not object during the closing argument, we must review the prosecutor's remarks for plain error. N.C.R. App. P.

10(c)(4) (2007). Under our plain error standard of review, "a defendant has the burden of showing: (i) that a different result probably would have been reached but for the error; or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *State v. Watkins*, 181 N.C. App. 502, 507, 640 S.E.2d 409, 413 (2007), *appeal dismissed by* 181 N.C. App. 502, 640 S.E.2d 896 (2007) (quoting *State v. Jones*, 358 N.C. 330, 346, 595 S.E.2d 124, 135 (2004)). The plain error rule is always to be applied cautiously and only to be used in the exceptional case. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983).

Our appellate courts have routinely recognized that "counsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence." *State v. Peterson*, 179 N.C. App. 437, 466-67, 634 S.E.2d 594, 616 (2006) (citations omitted), *aff'd*, 361 N.C. 587, 652 S.E.2d 216 (2007); *see also State v. Nguyen*, 178 N.C. App. 447, 457-58, 632 S.E.2d 197, 204-05 (2006) (holding that the prosecutor could use statements in her closing argument that had been admitted to impeach a witness). The statements of the prosecutor that defendant argues were improper had already been admitted into evidence through Officer Emanuel to corroborate Ms. Liles's testimony. The prosecutor is permitted to refer to any evidence presented at trial in her closing argument. We find that the prosecutor did not improperly use Ms. Liles's prior statements in her closing argument and therefore, the trial court's failure to intervene *ex mero moto* was not plain error.

III.

[3] Defendant asserts that the trial court erred by not instructing the jury on the defense of accident. Because the defendant did not request that the trial court instruct the jury on the accident defense, the standard of review is also plain error. *State v. Walters*, 357 N.C. 68, 91, 588 S.E.2d 344, 358 (2003) (citations omitted). "Before deciding that an error by the trial court amounts to 'plain error,' the appellate court must be convinced that absent the error the jury would have reached a different verdict." *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (quoting *Odom*, 307 N.C. at 661, 300 S.E.2d at 378-79). In this case, the only evidence relevant to an accident defense was defendant's prior statement to Officer Emanuel that his gun had accidentally discharged while he was trying to intervene between A.P. and Ms. Liles.

We find that defendant•has not satisfied his burden of showing plain error. As discussed above, there is enough evidence in the record supporting the State's case so that the possibility of a different verdict is too remote to meet the test of plain error. Thus, we do not find plain error.

IV.

**[4]** Defendant contends that the trial court coerced a verdict from the jury when only two hours after the jury began deliberating, it inquired into the numerical division of the jury and gave an *Allen* instruction. To determine if the trial court abused its discretion by inquiring into the numerical division early in the jury deliberations, the court examines whether, in the totality of the circumstances, the inquiry was coercive. *State v. Nobles*, 350 N.C. 483, 510, 515 S.E.2d 885, 901-02 (1999). Our Supreme Court has held that an inquiry into a jury division, without asking which votes were for conviction or acquittal, is not inherently coercive. *Id.*, 515 S.E.2d at 901. Some of the factors to be considered in the totality of circumstances include whether the trial court conveyed the impression that it was irritated with the jury for not reaching a verdict, whether the trial court intimated that it would hold the jury until it reached a verdict, and whether the trial court told the jury that a retrial would burden the court system. *Id.*, 515 S.E.2d at 901-02 (quotations and citations omitted).

In this case, the record demonstrates that the trial court did not take any action to coerce or intimidate the jury into reaching a verdict. After inquiring into the numerical split, the trial court did not ask whether the split was for conviction or acquittal. The trial court was not impatient towards the jury nor did it indicate that it would hold the jury until a verdict was reached.

Under certain circumstances, an inquiry may be necessary to efficient operation of the trial court and proper administration of justice. *State v. Fowler*, 312 N.C. 304, 308-09, 322 S.E.2d 389, 392 (1984) (deciding that the trial court's inquiry into the numerical division of the jury was necessary so that the court could plan whether or not to resume the trial after the weekend). Here, the trial court made the inquiry at approximately 4:00 p.m., which was an hour away from the afternoon recess. It was reasonable for the trial court to inquire into the numerical split in order to plan for the afternoon recess and the following day. We find that the trial court did not abuse its discretion when it inquired into the numerical division of the jury.

Defendant also argues that the trial court erred and coerced a verdict from the jury when it gave an *Allen* instruction. The *Allen* instruction is codified at N.C. Gen. Stat. § 15A-1235(b). N.C. Gen. Stat. § 15A-1235(b) (2005). According to the statute, the trial court may inform the jury before it retires for deliberation that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, jurors should not hesitate to re-examine or change their views, and no juror should surrender his honest convictions. *Id.* The decision to give an *Allen* instruction is within the sound discretion of the trial court. *State v. Adams*, 85 N.C. App. 200, 210, 354 S.E.2d 338, 344 (1987) (citations omitted). We will review the trial court's decision to give an *Allen* instruction for abuse of discretion. *Id.*

In *Adams*, this Court found that giving an *Allen* instruction after about two hours was not an abuse of discretion because there was no indication that the trial judge was using other means to force a verdict. *Id.* Similarly, the record here does not show that the trial court attempted to coerce the jury into reaching a verdict. We hold that the trial court did not abuse its discretion when it gave an *Allen* instruction to the jury.

V.

[5] Defendant has brought to our attention a clerical error in defendant's judgment and commitment form and asks this Court to remand the matter for correction. Specifically, defendant notes that his judgment and commitment form incorrectly states the date judgment was entered as 14 August 2007. Moreover, the judgment and commitment form also incorrectly states the offense date as 6 November 2006 and that the offense he was convicted of, assault with a deadly weapon inflicting serious injury, is codified at N.C. Gen. Stat. § 14-31(b). When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth. *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696-97, (2008) (citations and quotations omitted).

Based on the record, defendant's judgment and commitment form should indicate (1) the date of judgment as 16 August 2007, (2) the offense date as 16 November 2006, and (3) the offense defendant was convicted of is codified at N.C. Gen. Stat. § 14-32(b). Accordingly, we remand for correction of the clerical errors found on defendant's judgment and commitment form.

STATE v. TICE

[191 N.C. App. 506 (2008)]

VI.

For the reasons stated here, we find no error in defendant's trial and remand only to correct clerical errors in defendant's judgment and commitment form.

No error at trial; remanded for correction of clerical errors.

Judges WYNN and ARROWOOD concur.